1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DEBRA WALTERS,                              No.  2:17-cv-2393 MCE KJN P

12                   Plaintiff,

13           v.                                   ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
15    REHABILITATION ("CDCR"), et al.,

16                   Defendants.

17

18          Plaintiff is the sister of deceased inmate, David C. Cobb,[1] and is proceeding through

19    counsel.  Defendants Gants, Hallstrom, Hassan, Pickering,[2] and Thompson filed a motion to

20    dismiss plaintiff's state law claims in the amended complaint on the grounds that such claims are

21    untimely.  On January 4, 2018, the motion to dismiss came on regularly for hearing.  Frank T.

22    Stanley, Esq., appeared for plaintiff.  Lucas L. Hennes, Deputy Attorney General, appeared for

23    moving defendants.  Upon review of the motion and the documents in support and opposition,

24    upon hearing the arguments of counsel and good cause appearing therefor, the undersigned finds

25    _____

26    [1]  Plaintiff claims she is the sole next of kin to Cobb, who was unmarried, had no biological
      children, and left no legal heirs.  (ECF No. 17 at 3.)

27
      [2]  Defendant Pickering was named as "Puckering" in the amended complaint, and is referred to as
28    "Pickering" hereafter.

                                                    1

that the motion is well taken, and recommends that the moving defendants' motion to dismiss be granted, as set forth below.

I. Background

On August 10, 2016, the forensic pathologist dictated his autopsy findings: "documented history of cucumber pieces in airway after being found unresponsive," and concluded the cause of death was: "choking due to aspiration of food, (4 Days)."[3] (ECF No. 17 at 23.) The death certificate lists the cause of death as "choking due to aspiration of food," and was classified as an "accident." (ECF No. 17 at 20.) In a letter dated August 22, 2016, addressed to Warden Martell, plaintiff and her husband disputed that Mr. Cobb's death was the result of suicide and sought an investigation into Cobb's death. (ECF No. 13-2 at 50-51.)

On September 9, 2016, plaintiff signed a claim with the California Government Claims Program alleging the wrongful death of David C. Cobb due to choking (aspiration of food), and claiming that the state is responsible due to "gross negligence by failing to prevent homicide or suicide of inmate by staff and security personnel." (ECF No. 13-2 at 51.) The claim was received on September 13, 2016. (Id. at 50, 55.)

On December 14, 2016, plaintiff's claim was rejected by the Government Claims Program, and was warned that any court action must be filed within six months. (ECF No. 13-2 at 58.)

On February 10, 2017, plaintiff retained counsel to investigate and prosecute Cobb's death. (ECF No. 17 at 3.)

---

[3] The report noted that Cobb was transported to the hospital on August 2, 2016. Whitney Jackson from Donor Network West reported that Cobb had a cucumber and walking cane in his throat, and she "was unsure if the decedent was a victim of a homicide or a suicide." (ECF No. 17 at 21.) Lt. Day from CHCF stated Cobb was found unresponsive on the floor of his cell during a security check." (ECF No. 17 at 22.) Correctional officers found Cobb's "cell in disarray with a desk knocked over," and "numerous items in his throat which included: cucumber, clothing, other cloth, plastic as such from a baggie, and [Cobb's] walking cane." (Id.) Cobb "was alone in his cell at the time of the incident and it is believed that this may have been a suicide attempt." (ECF No. 17 at 22.) Lt. Day was "unaware if the decedent had made any type of threats in the past to commit suicide and may have had some mental health issues." (Id.) CDCR medical staff confirmed that in addition to other medical ailments, Cobb suffered from "unspecified psychosis and personality disorder." (ECF No. 17 at 22.)

On March 2, 2017, plaintiff's counsel ordered the autopsy report from the San Joaquin County Coroner, wrote a follow-up letter on March 22, 2017, and faxed a second request on March 24, 2017. (ECF No. 17 at 14-16.) On March 24, 2017, Diana Scott, Senior Officer's Assistant with the Coroner's office sent plaintiff's counsel an email stating they were waiting on additional records to determine the cause of death, and their response was delayed. (ECF No. 17 at 17.)

On April 7, 2017, Ms. Scott emailed the autopsy report to plaintiff's counsel. (ECF No. 17 at 19.)

On May 17, 2017, plaintiff filed her original complaint in the San Joaquin County Superior Court.

In a June 23, 2017 letter to CDCR counsel, plaintiff stated she needed the investigation report to file Doe amendments to her complaint. Following several phone calls and letters, on June 29, 2017, defendant CDCR agreed to informally produce the incident report in exchange for the dismissals of named defendants CDCR, California Health Care Facility ("CHCF") and Warden Martell. (ECF No. 17 at 7.)

On July 25, 2017, CDCR produced the August 2, 2016 incident report as well as a CD containing the video recordings from Cobb's housing unit for the time period at issue. (Id.)

On July 27, 2017, plaintiff dismissed from the original complaint's first cause of action (negligence): defendants CDCR, CHCF, and Warden Martell, with prejudice; and from the second cause of action (fraud): Martell, with prejudice; CHCF and CDCR, without prejudice. (ECF No. 13-2 at 16, 19, 25, 31, 37, 43.)[4]

On September 18, 2017, plaintiff filed an amended complaint.

On September 26, 2017, plaintiff sent CDCR counsel a copy of the amended complaint. (ECF No. 17 at 8.) On September 28, 2017, plaintiff agreed to dismiss the CDCR and CHCF from the amended complaint. (ECF No. 17 at 8.) CDCR counsel advised he was not authorized

---

[4] Defendants contended that plaintiff could not assert a cause of action for wrongful death against the CDCR or the CHCF, because they are immune from liability under Government Code section 844.6. See May v. County of Monterey, 139 Cal. App. 3d 717, 721 (1983).

to accept service on behalf of the new individual defendants named in the amended complaint. (Id.)

Plaintiff served process on the new individually-named defendants on October 16, 2017.

On October 16, 2017, defendants CHCF and CDCR were dismissed with prejudice from plaintiff's amended complaint, as to the first cause of action (general negligence). (ECF No. 13-2 at 70, 73.)

On November 15, 2017, CDCR counsel removed the action to federal court on behalf of the moving defendants.

Moving defendants assert that plaintiff's state law claims in the amended complaint are untimely under California Code of Civil Procedure ("CCP") section 474, and California Government Code sections 946.6 and 950.6, and do not relate back under state law. Plaintiff opposes the motion, arguing that the claims relate back to the original complaint. Defendants filed a reply.

II. Original Complaint

Plaintiff's original complaint alleged (1) general negligence/wrongful death; and (2) fraud/misrepresentation. In the first cause of action, plaintiff alleged that defendants CDCR, CHCF, Warden Martell, and Does 1 - 50,

> breached their duty of care and the special relationship . . . between a jailer and prisoner to protect the prisoner from foreseeable harm inflicted by a third party, by failing to properly guard, maintain the safety of, oversee, prevent harm to, furnish the necessary and adequate protection from attack, properly secure, and properly supervise, David C. Cobb, an inmate. . . .

(ECF No. 13-2 at 9 (emphasis added).)

In the original complaint, plaintiff unequivocally alleged that plaintiff's death was not by suicide. For example, the fraud cause of action is based upon the allegation that "on August 10, 2016, Lt. Lee, a Public Information officer of the [CDCR], and California Health Care Facility, alleged and stated to plaintiff that it was the position of CDCR and the CHCF that inmate David C. Cobb's death was the result of a suicide." (ECF No. 13-2 at 10.) Further, plaintiff alleged that "Cobb, who was blind, almost totally deaf, and wheelchair bound, was the victim of a homicide

perpetrated by some person with access to his cell, who shoved various objects down his throat, including a cucumber, clothing, other cloth, plastic as such from a baggie, and Mr. Cobb's own walking cane." (Id. at 10.)  Plaintiff alleged that as a result, plaintiff was led to believe her brother committed suicide, and "induced [plaintiff] to inform the immediate members of her family about the alleged cause of her brother's death, which has caused the plaintiff added stress, extreme sadness, and embarrassment."  (Id.)

III.  Amended Complaint

Plaintiff's amended complaint retains the general negligence/wrongful death cause of action; dropped the fraud/misrepresentation cause of action; and added a new cause of action for intentional tort:  deliberate indifference under the Eighth Amendment.[5]  Specifically, plaintiff claims that defendants CDCR, CHCF, Hassan, Pickering, Gants, Thompson, Hallstrom, Casas, Garibay, Idemudia, and Does 1 - 50 breached their respective duties of care

> and the special relationship that exists between a jailer and prisoner to protect a prisoner from foreseeable harm, by acting with deliberate indifference to the serious medical needs of inmate David C. Cobb, when said defendants were in the immediate vicinity of Cobb's cell and failed to enter inmate Cobb's cell in a timely and reasonably urgent fashion in order <u>to prevent Cobb's suicide</u> attempt when the suicide attempt was in progress and reasonably obvious and apparent.

(ECF No. 1 at 7 (emphasis added).)  Further, plaintiff alleges that defendants Hassan, Pickering, Gants, Thompson, Hallstrom, Casas, Garibay, and Idemudia, and Does 1- 50, breached their duties and standards of care by permitting medical personnel to perform CPR and other life-saving measures on plaintiff without first notifying such medical personnel, for several minutes, that Cobb still had foreign objects lodged in his throat and mouth, causing Cobb to suffocate for several additional minutes and lose vital oxygen necessary for proper brain functioning.  Id.

////

---

[5]  The Government Claims Act statute of limitations does not apply to federal § 1983 claims, and are not challenged in the instant motion.  <u>Silva v. Crain</u>, 169 F.3d 608, 610 (9th Cir. 1999) ("state notice of claim statutes have no applicability to § 1983 actions").

IV.  Judicial Notice

    A.  Defendants' Request

Moving defendants ask the court to take judicial notice of the following documents:

A.  Plaintiff's Original Complaint, filed May 17, 2017;

B.  Voluntary dismissals entered on July 27, 2017;

C.  Plaintiff's September 13, 2016 Government Claim;

D.  December 14, 2016 rejection letter from Government Claims Board;

E.  Summons for named defendants for plaintiff's amended complaint;

F.  Voluntary dismissals entered on October 16, 2017.

(ECF No. 13-2.)

A federal court may take judicial notice of adjudicative facts. Fed. R. Evid. 201(a)-(c). Judicial notice may be taken of the records of this or other courts for the facts that those records represent. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001) (court may take judicial notice of dismissal and ground therefore, but not of disputed facts therein). Proper subjects of judicial notice include "court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Fed. R. Evid. 201(b)(2). Courts may also take judicial notice of some public records, including the "records and reports of administrative bodies." United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003); Marsh v. San Diego County, 432 F.Supp. 2d 1035, 1043-44 (S.D. Cal. 2006) (courts may take judicial notice of records and reports of administrative bodies, including the VCGCB).

The documents identified as A, B, E, and F are part of a court file and record, and are not reasonably subject to dispute. Similarly, documents identified as C and D are public records from a California administrative agency, and the accuracy of such documents cannot reasonably be questioned and are not subject to dispute. Accordingly, defendants' request for judicial notice is granted.

    B.  Documents Provided by Plaintiff

Plaintiff provided copies of Cobb's death certificate and coroner's report concerning Cobb's death, but did not request that the court take judicial notice of such documents. (ECF No.

17.)

A death certificate and coroner's report are public records, and the documents provided appear to be authentic. No party disputed their authenticity. Thus, the undersigned takes judicial notice of such documents, but considers them not for the truth of the facts set forth therein, but to demonstrate what alleged facts plaintiff knew at the time she filed the original complaint. Lee, 250 F.3d at 688 (court may take judicial notice of certain facts without converting motion to dismiss to summary judgment motion); see also MacLay v. M/V SAHARA, 926 F.Supp.2d 1209, 1217 (W.D. Wash. 2013) (taking judicial notice of the mode and manner of death based on the death certificate).

## V. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). Legally conclusory statements, when unsupported by actual factual allegations, need not be accepted. Iqbal, 556 U.S. at 678-79.

"Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014). In other words, a motion to dismiss based on the running of a statute of limitations cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995). Further, if the plaintiff's allegations from the complaint or any materials subject to judicial notice, "an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper."

1    ASARCO, LLC, 765 at 1004 (citation omitted).

2          A.   Tort Claim Statute of Limitations

3          California's Government Claims Act requires that tort claims brought against a public

4    entity or its employees under state law be presented to the California Victim Compensation and

5    Government Claims Board no more than six months after the cause of action accrues.  Cal. Gov't

6    Code §§ 945.6, 950.6.  Presentation of a written claim and action on or rejection of the claim are

7    conditions precedent to suit.  State v. Superior Court of Kings Cnty. (Bodde), 32 Cal. 4th 1234,

8    1239 (2004).  To state a tort claim against a public employee, plaintiff must allege compliance

9    with the Government Claims Act and if he failed to comply, he may not bring any state law tort

10   claims in this action, regardless of the merits of those claims.  Bodde, 32 Cal. 4th at 1239.

11   Timely claim presentation is an element of the cause of action; therefore, a plaintiff must "allege

12   facts demonstrating or excusing compliance with the claim presentation requirement" in the

13   complaint.  Id. at 1243; accord Summerfield v. Fackrell, 2011 WL 794971, at *2 (E.D. Cal. Mar.

14   1, 2011).  The intent of the statute is to give the public entity notice of the claim so that it can be

15   given "a timely opportunity to investigate the claim and determine the facts; and to avoid

16   unnecessary lawsuits by giving the [entity] the opportunity to settle meritorious claims without

17   going through an avoidable trial."  See Lacy v. City of Monrovia, 44 Cal. App. 3d 152, 155

18   (1974).

19         Here, plaintiff's tort claim was denied on December 14, 2016; thus, any relevant tort claim

20   must have been filed in state court on or before Wednesday, June 14, 2017.  Plaintiff did not file

21   the amended complaint until September 18, 2017.  Because plaintiff did not name any of the

22   moving defendants or include her amended negligence claims against the newly-named

23   defendants in the May 17, 2017 original complaint,[6] such claims are time-barred unless they

24   ――――――――――
     [6]  Defendants also argue that plaintiff failed to substitute any of the newly-named defendants as a
25   Doe defendant named in the original complaint.  CCP section 474 provides in pertinent part that:
     "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the
26   complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be
     designated in any pleading or proceeding by any name, and when his true name is discovered, the
27   pleading or proceeding must be amended accordingly. . . ."  CCP § 474.  Defendants are correct.
     However, if plaintiff's amended claims properly relate back to the original complaint, the failure
28   to substitute can be rectified by a court order allowing plaintiff to amend to correct such
     procedural defect.  Woo v. Sup. Ct., 75 Cal. App. 4th 169, 176 (1999).

8

relate back to the claims raised in the original complaint.

B. <u>Governing Law on Relation Back</u>

Defendants argue that state law controls the determination of the relation back of plaintiff's amended negligence claims. But the Ninth Circuit resolved that issue in 2014. Where, as here, state law provides the applicable statute of limitations,[7] an amended complaint may relate back to the filing of the original complaint if it satisfies either state or federal law on relation back. <u>Butler v. Nat'l Cmty. Renaissance of Cal.</u>, 766 F.3d 1191, 1200 (9th Cir. 2014). Thus, this court is required to consider both Rule 15(c)(1) of the Federal Rules of Civil Procedure as well as California state law in determining relation back, and to "employ whichever affords the 'more permissive' relation back standard." <u>Butler</u>, 766 F.3d at 1201.

1. <u>Federal Law</u>

"Relation back" refers to a doctrine that allows an amendment of a pleading to "relate back" to the date of the original pleading, thus evading any statute of limitations that might affect the amendment. <u>Baldwin Cty. Welcome Center v. Brown</u>, 466 U.S. 147, 149 n.3 (1984).

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

[7] Because 42 U.S.C. § 1983 does not contain its own statute of limitations, claims brought under that statute are governed by California's statute of limitations for personal injury claims, which is two years. <u>Butler v. Nat'l Cmty. Renaissance of Cal.</u>, 766 F.3d 1191, 1198 (9th Cir. 2014).

Fed. R. Civ. P. 15(c)(1).

"An amended claim arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading." ASARCO, LLC, 765 F.3d 999, 1004 (citations and internal quotation marks omitted). "The relation back doctrine of rule 15(c) is liberally applied." Id. (citing Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n.29 (9th Cir. 1982)). Nevertheless its requirements, as so construed, are mandatory." Fireman's Fund Ins. Co. v. Sparks Const., Inc., 114 Cal. App. 4th 1135, 1143-44 (Cal. Ct. App. 2004) (internal citations omitted). To relate back, the two pleadings must share a common core of operative facts, so that defendants are adequately put on notice of the charges against them. ASARCO, LLC, 765 F.3d at 1004 (quoting Martell v. Trilogy Ltd., 872 F.2d 322, 325 (9th Cir. 1989)).

### 2. California Law

"The relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one." Norgart v. Upjohn Co., 21 Cal. 4th 383, 408-09 (1999), citing Barrington v. A. H. Robins Co., 39 Cal. 3d 146, 150-51 (1985); Smeltzley v. Nicholson Manufacturing Co. , 18 Cal. 3d 932, 934-40, 136 Cal. Rptr. 269 (1977).

An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action. Smeltzley, 18 Cal. 3d at 934, 936. However, the doctrine is unavailable where "the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint." Stockwell v. McAlvay, 10 Cal. 2d 368, 375 (1937). "In determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading." Pointe San Diego Residential Cmty., L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP, 195 Cal. App. 4th 265, 276 (2011). The policy behind California's statutes of limitations and relation-back doctrine is to "put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits." Garrison v. Bd. of Directors, 36 Cal.

1  App. 4th 1670, 1678 (1995).

2     Nonetheless, even if an earlier complaint rests on the same set of facts, the amended

3  complaint may not relate back unless a "reasonable defendant [would] have understood the

4  [original] complaint to allege that it was in some way responsible for plaintiff's injury[.]"  Bell v.

5  Tri-City Hosp. Dist., 196 Cal. App. 3d 438, 449 (1987), disapproved of on other grounds by State

6  v. Super. Ct. (Bodde), 32 Cal. 4th 1234 (2004).  Thus, "[t]he relation-back doctrine is

7  inapplicable . . . where [a plaintiff] attempts to relate back an amended [complaint] to a complaint

8  which failed to name [defendant] or any Doe defendants."  Kralow Co. v. Sully-Miller

9  Contracting Co., 168 Cal. App. 3d 1029, 1035-36 (1985); see also Anderson v. Allstate Ins. Co.,

10  630 F.2d 67, 683 (9th Cir. 1980) ("Under California law, if a defendant is added to an amended

11  complaint as a new defendant, and not as a Doe defendant, the amendment does not relate back to

12  the time of the original complaint.").  "The general rule is that an amended complaint that adds a

13  new defendant does not relate back to the date of filing the original complaint and the statute of

14  limitations is applied as of the date the amended complaint is filed, not the date the original

15  complaint is filed."  Woo v. Sup. Ct., 75 Cal. App. 4th 169, 176 (1999); see also Butler, 766 F.3d

16  at 1201.[8]

17      C.  The Parties' Positions

18         1.  Plaintiff

19     Plaintiff argues that the amended complaint relates back to the original complaint because

20  "it is based upon the same general facts," and asserts a claim arising out of the conduct or

21  occurrence set forth in the original complaint, and that the moving parties received "such notice

22  of the action that they will not be prejudiced in defending it on the merits, as they knew or should

23

24  [8]  California courts have recognized that "where an amendment does not add a 'new' defendant,
   but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an
25  exception to the general rule of no relation back."  Hawkins v. Pac. Coast Bldg. Prods., Inc., 124
   Cal. App. 4th 1497, 22 Cal. Rptr. 3d 453, 457 (2004); Woo, 75 Cal. App. 4th at 176-77 (to come
26  under such exception the plaintiff must have been "genuinely ignorant" of the new defendant's
   identity at the time the plaintiff filed the original complaint.)  Here, however, plaintiff seeks to
27  add new defendants not named in the original complaint and is not attempting to correct a
   misnomer or mistake.  Therefore, plaintiff is not entitled to such exception.
28
                                        11

have known that an action would be brought against them."  (ECF No. 18 at 2.)  Both complaints involved the death of inmate Cobb, the same incident at CHCF, and allege that corrections officers and staff of the CHCF failed to intervene in a timely fashion to prevent the death of Cobb.  (ECF No. 18 at 8-9.)  The instrumentality of Cobb's death was the same:  death by aspiration in choking on items lodged in his throat, rendering the sole use of homicide in the amended pleading as "mere semantics."  (ECF No. 18 at 9.)  Because both pleadings reference Cobb's death as a result of choking on items lodged in his throat, defendants are not prejudiced by allowing relation back.  Moreover, plaintiff contends that even if changing the word "homicide" to "suicide" constitutes a material change in allegation, such change is slight and does not prejudice the moving parties because both complaints contained the same general set of facts concerning Cobb's death, relying on <u>Austin v. Massachusetts Bonding & Ins. Co.</u>, 56 Cal. 2d 596, 602 (1961).  (ECF No. 18 at 9-10.)

Further, plaintiff argues that the amended complaint relates back to the original complaint under Rule 15(c) because plaintiff's general negligence/wrongful death claim arose out of the same conduct or occurrence.  The moving parties received "such notice of the action that they will not be prejudiced in defending it on the merits because:  defendant CDCR was served with process on June 7, 2017, within the required 90 day period (Fed. R. Civ. P. 4(m)); plaintiff's counsel and CDCR counsel met and conferred on June 20, 2017, "regarding the matter"; on June 23, 2017, plaintiff's counsel wrote CDCR counsel expressing "the need to ascertain which correctional officers and hospital employees were on shift at the time of the Cobb incident; and on June 29, 2017, such counsel entered into an agreement for dismissals of certain defendants in exchange for receipt of the incident report concerning Cobb's death.  (ECF No. 18 at 11.)  Such facts demonstrate that the moving parties were "realistically placed on notice prior to July 17, 2017 (within 90 days after filing the original pleading) that a suit would be brought against them each individually."  (ECF No. 18 at 11)

2.  <u>Moving Defendants</u>

Moving defendants counter that plaintiff confuses the alleged injury (death by choking) with the instrumentality of such death, contrary to <u>Coronet Mfg. Co. v. Sup. Ct.</u>, 90 Cal. App. 3d

12

342, 347 (1979).  In reversing the trial court's decision, the state appellate court held "that the difference between the *instrumentality* alleged in each complaint (a hair dryer vs. a socket and switch) meant that the same general facts did not exist," and therefore the amended complaint did not relate back, even though the electrocution occurred at the same time and place.  (ECF No. 23 at 3, explaining Coronet.)  Here, plaintiff initially alleged Cobb was brutally murdered by a third party forcing items down his throat with the intention of killing him, but the amended complaint alleges that Cobb willingly ingested these items to take his own life.  (ECF No. 23 at 4.)  Such "entirely different instrumentalities" have "entirely different implications for the lawsuit," and prevent relation back.  (ECF No. 23 at 4.)[9]

Further, defendants object that plaintiff's focus on prejudice is inapposite because it relies on arguments based on equity or fairness.  "The time limitations contained in California Government Code sections 945.6(a) and 950.6(b) are assertions of sovereign immunity against state-law claims," which require the court to consider "whether the complaint complied with procedural requirements for bringing suit against public entities and employees."  (ECF No. 23 at 4.)  Because the court does not have discretion to excuse plaintiff's failure to comply with such mandatory procedures, the state law claims should be dismissed.

D. Analysis

In resolving the issue of relation back, the undersigned must balance two competing concerns.  On the one hand, the relation back doctrine is to be liberally applied under both Rule 15(c) and California law.  The purpose of Rule 15's relation back doctrine "is to provide

---

[9]  Defendants also rely on Barrington v. A.H. Robins Co., 39 Cal.3d 146 (1985).  Barrington did not directly address whether an amended pleading relates back for purposes of CCP section 474; the issue was whether an amended pleading related back to the original pleading for purposes of the requirement that service of the summons be made within three years after the action is commenced.  Barrington, at 149 (addressing application of CCP section 581a).  In Barrington, the plaintiff sued her doctor and a drug manufacturer for medical malpractice and the negligent failure to warn of the dangers involved in taking a drug.  Thereafter, she substituted A.H. Robins Co. (Robins) for a Doe defendant.  As to Robins, she alleged that the instrumentality that caused her injury "was a defective 'Dalkon Shield' intrauterine device, manufactured by Robins."  Id. The court held that the amended complaint did not relate back to the filing of the original complaint because it was not based on the same operative facts.  Id. at 154.

maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." ASARCO, LLC, 765 F.3d at 1004. On the other hand, the purpose of the statute of limitations, to protect defendants from stale claims, must also be respected. Defendants are entitled to notice of facts, and fairness "demands that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff." See Percy v. San Francisco General Hosp., 841 F.2d 975, 979 (9th Cir. 1988).[10]

In balancing such competing concerns, as discussed below, the undersigned finds that the negligence claims do not relate back for the following reasons: the instrumentality of Cobb's death in the original complaint differs from the amended complaint and relies on a different set of facts and evidence while also adding some new defendants, thereby failing to meet all three elements required under Norgart, as well as the requirements of Rule 15(c)(1)(A); and, plaintiff fails to demonstrate that the amended negligence claims arise from the same transaction, conduct or occurrence as those pled in the original complaint, as required under Rule 15(c)(1)(B).

### 1. Instrumentality

In her initial pleading, plaintiff identified the cause of Cobb's death solely as homicide despite knowing that prison officials viewed Cobb's death as a suicide, and despite earlier listing the cause of Cobb's death as "homicide or suicide" in her state tort claim. In the original complaint plaintiff alleged that defendants CDCR, CHCF, and Warden Martell intentionally or negligently misrepresented the cause of plaintiff's death, acknowledging that CDCR Lt. Lee told plaintiff on August 10, 2016, that Cobb's death was the result of a suicide. (ECF No. 13-2 at 10.) Indeed, plaintiff sought emotional distress damages based on the resulting inducement to inform family members of Cobb's alleged suicide. (ECF No. 13-2 at 11.)

In addition, plaintiff concedes she received the coroner's report prior to filing the original

---

[10] In Percy, the City was named as a defendant in the original complaint. But the court concluded that "[e]ven the most liberal reading of Percy's original complaint fail[ed] to provide the City with notice that, in addition to the circumstances surrounding his discharge based upon alleged racial discrimination, the City should have been prepared to defend a claim of a denial of due process in a subsequent Civil Service Commission hearing. The two events are entirely different." Percy, 841 F.2d at 980. Thus, even though the City was named as a defendant, the amended cause of action did not relate back to the original complaint.

1    complaint, and the coroner did not determine Cobb's death was caused by a third party attack or

2    murder. Rather, the coroner deemed the death an accident. The report reflected that when prison

3    staff went to monitor Cobb, staff discovered Cobb alone on the floor of his cell, and staff believed

4    the incident was a suicide attempt. Medical staff at the CHCF confirmed that Cobb suffered from

5    "unspecified psychosis and personality disorder." (ECF No. 17 at 22.) Such alleged facts

6    demonstrate that plaintiff was put on notice of facts supporting a finding that Cobb committed

7    suicide before the original complaint was filed. Thus, it is undisputed that plaintiff was aware of

8    the instrumentality of Cobb's death, suicide, well before the filing of the original complaint.

9         Plaintiff argues that the instrumentality of Cobb's death, suffocation or choking, was the

10   same in both pleadings. But under Norgart, injury and instrumentality are two separate elements

11   that plaintiff must meet. Id. Moreover, instrumentality is defined as "a thing used to achieve an

12   end of purpose." Black's Law Dictionary 802 (7th ed. 1999). The defendants' failure to protect

13   Cobb does not meet such definition because their alleged failure to act cannot be construed as

14   "used to achieve" Cobb's death. Rather, the thing used to achieve Cobb's death was either a third

15   party attack/homicide, as alleged in the original complaint, or suicide, as alleged in the amended

16   complaint.

17        Further, at the hearing, defendants argued that under Coronet, the court cannot find that

18   Cobb's injuries are the same as the alleged instrumentalities of Cobb's death. Indeed, in Coronet

19   the court stated that "[a]lthough they relate to a single death at a single location they are different

20   'accidents' and involve different instrumentalities." Coronet, 90 Cal. App. 3d at 347. The court

21   explained that the liberality of relation back is not open-ended, but involves analysis of "'the

22   same accident,' and the offending instrumentality." Id., 90 Cal. App. 3d at 345. In Coronet, the

23   instrumentalities of the decedent's death by electrocution differed (a hair dryer vs. a socket and

24   switch), and here, the instrumentalities of Cobb's death also differ (homicide vs. suicide). As the

25   California Supreme Court explained in Norgart, "failure to discover, or have reason to discover,

26   the identity of the defendant does not postpone the accrual of a cause of action, whereas a like

27

28

failure concerning the cause of action itself does,"[11] because,

> once the plaintiff is aware of the [cause of action], he normally has sufficient opportunity, within the applicable limitations period, to discover the identity of the [defendant(s)].  He may often effectively extend the limitations period in question by the filing and amendment of a Doe complaint and invocation of the relation-back doctrine.  Where he knows the identity of at least one defendant . . ., [he] must proceed thus.

21 Cal. 4th at 399 (internal quotation marks and citations omitted).  Therefore, even though plaintiff was unaware of the identities of the moving defendants at the time she filed the original complaint, plaintiff was aware of the suicide instrumentality, and could have pled an alternative cause of action addressing the alternative instrumentality of Cobb's death and could name Doe defendants in connection therewith.  The undersigned is persuaded that this case is similar to Coronet based on the different instrumentalities alleged by plaintiff in her pleadings.

It is undisputed that plaintiff was aware of the suicide instrumentality before counsel filed the original complaint, as evidenced by plaintiff's September 9, 2016 government tort claim which alleged "homicide or suicide," as well as the facts alleged in her original pleading.  The decision of counsel for plaintiff to plead only homicide as the cause of Cobb's death cannot reasonably be construed as a "mistake."  At the hearing, it became clear that counsel consciously chose to pursue an action based solely on a theory that Cobb was attacked by a third party and murdered, as urged by his client and her husband.  Plaintiff's counsel made such a choice despite plaintiff previously filing a government tort claim citing the cause of death as either homicide or suicide, and despite counsel having benefit of the coroner's report stating that plaintiff was in his cell alone when discovered, and noting plaintiff's mental illness, and finding the cause of death was accidental aspiration of food.  Indeed, plaintiff's counsel conceded that absent benefit of the

---

[11]  In reaching this conclusion, the court in Norgart relied on Bernson v. Browning-Ferris Industries, 7 Cal. 4th 926, 932, 30 Cal. Rptr. 2d 440 (1994) (the purpose of the statute of limitations is to protect defendants from the stale claims of dilatory plaintiffs), and cited as an example, Jolly v. Eli Lilly & Co. 44 Cal. 3d 1103, 1114 and footnote 13 ("[T]he limitations period begins when the plaintiff suspects, or should suspect, that [he] has been wronged," even if he does "not know *whom* to sue.")  The statute of limitations "has as a related purpose to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion."  Norgart, 7 Cal. 4th at 932 (citations omitted).

16

video recording of plaintiff's housing unit at the time of the incident, plaintiff would still be pursuing solely her claim that Cobb was murdered.

For all of the above reasons, plaintiff's amended negligence claims do not relate back to the original complaint under state law.

### 2. Different Set of Facts

Plaintiff is correct that some of the facts surrounding Cobbs' death are the same whether Cobb committed suicide or was attacked by a third party intent on murdering Cobb. Cobb aspirated food in his cell at CHCF on August 2, 2016, which resulted in his death four days later.

But the original complaint alleged that defendants CDCR, CHCF, Warden Martell and Does 1 - 50, breached their duty of care and the special relationship between a jailer and prisoner to protect Cobb from foreseeable harm inflicted by a third party, by failing to properly guard, maintain the safety of, oversee, prevent harm to, protect from attack, properly secure, and properly supervise Cobb. (ECF No. 13-2 at 9.) Such allegations suggest prison officials should conduct a homicide investigation, determine who the third party was, which, as defendants argued at the hearing, would involve reviewing inmate movement logs to discover who had access to Cobb's cell. Such inquiry would focus on an earlier timeframe, evaluating what happened prior to items being forced down Cobb's throat, what steps defendants took and did not take prior to the attack to protect Cobb from the attack, and would not require evaluation of what took place after Cobb was found unresponsive in his cell.

By contrast, the amended allegations identifying suicide as the instrumentality would require prison officials to investigate whether the newly-named defendants properly responded to Cobb's suicide attempt on August 2, 2016. Such investigation might involve review of Cobb's mental health records to determine whether prison staff were required to monitor plaintiff at particular intervals, and thus may involve review of suicide or mental health monitoring logs, if such were required. Similarly, the investigation would require review of prison regulations concerning suicide protocols and whether such protocols were met by the newly-named defendants once Cobb was found unresponsive in his cell. In addition, defendants would have to determine whether each defendant was aware of any suicide monitoring requirement in

connection with inmate Cobb, and which defendants were required to intervene under the circumstances. In connection with plaintiff's new claim that newly-named defendants failed to timely advise responding medical officials that items remained in Cobb's airway before further life-savings steps were taken, defendants would have to determine which newly-named defendants were responsible for communicating with outside responding medical professionals. Moreover, the investigation under the amended complaint would focus on the newly-named defendants' actions taken and not taken <u>after</u> Cobb was found unresponsive in his cell, not before.

While some of the newly-named defendants are correctional officers who were required to protect Cobb from both homicide and a suicide attempt, the underlying evidence is also different. Investigating a homicide would not necessarily require defendants to review Cobb's mental health records, and would not require review of any suicide protocols or monitoring logs connected therewith. Absent facts not alleged in the original complaint, no medical personnel would normally be involved in a homicide investigation. Thus, defendant Hallstrom, a Registered Nurse, would not be involved in such homicide investigation.

Plaintiff's reliance on <u>Austin</u>, 56 Cal. 2d at 602, is also unavailing because it is distinguishable on its facts. In <u>Austin</u>,

> the original complaint alleged certain defalcations by a securities broker and further alleged the existence of a surety bond without any allegations as to who the surety was or that indemnification was being sought. A later amendment naming Massachusetts as the surety and alleging its liability under the bond was held to "relate back" as being based on the same general set of facts. There the underlying "accident"-the defalcation of the original broker- remained the same.

<u>Coronet</u>, 90 Cal. App. 3d at 346. But here, the alleged neglect of the defendants is different -- initially, plaintiff alleged that defendants were negligent in failing to protect Cobb from a third party attack, criminal conduct involving review of records as to cell access and inmate movement. In the amended complaint, plaintiff now alleges negligence in failing to urgently enter Cobb's cell in order to intervene and prevent Cobb's suicide attempt, and to timely notify responding medical personnel that Cobb had additional foreign objects in his throat. Here, unlike in <u>Austin</u>, the instrumentality differs, resulting in the reliance on different facts and evidence.

### 3. Rule 15(c)(1)(B)

Because California law and Rule 15(c)(1)(A) do not permit relation back, plaintiff must demonstrate she is entitled to relief under Rule 15(c)(1)(B), as well as under both 15(c)(1)(C)(i) and (ii).

Plaintiff argues that the amended complaint relates back to the original complaint under Rule 15(c)(1)(B) because both pleadings asserted a general negligence/wrongful death claim which arose out of the same conduct or occurrence set out, or "at least attempted to be set out, in her original pleading." (ECF No. 18 at 11.) Plaintiff apparently relies on her earlier arguments that the death involved "the same individual, the same incident, and the same location, and are based upon the same general set of facts, whereby the plaintiff alleges that corrections officers and staff at the CHCF failed to intervene in a timely fashion to prevent the death of Cobb." (ECF No. 18 at 9.)

While some of the newly-named defendants are correctional officers who were required to protect Cobb from both homicide and the suicide attempt, the evidence needed to address plaintiff's amended allegations is different. As discussed above, investigating a homicide would require review of inmate movement logs to determine who had access to Cobb's cell, including whether there were any known inmate threats against Cobb, whereas medically-related negligence would involve review of Cobb's mental health records, suicide protocols or regulations, and monitoring logs connected therewith, not required in investigating the original complaint. Absent facts not alleged in the original complaint, no medical personnel would be involved in a homicide investigation.

Review of the two complaints reveals that the amended negligence claims do not rely on the same common core of operative facts that would be relied on in a homicide investigation, and therefore would not adequately put the newly-named defendants on notice of the charges against them. Plaintiff fails to address what evidence would be relied upon to determine either negligence claim, and does not identify evidence that would be relied upon under both pleadings. Thus, the undersigned finds that plaintiff failed to demonstrate that the amended negligence claim is based on the same conduct, transaction, or occurrence, and the amended complaint does not

meet the requirement of 15(c)(1)(B).

In light of such finding, the court need not address the issue of timely notice under Rule 15(c)(1)(C)(i) and (ii).

E. <u>Conclusion</u>

For all of the above reasons, the undersigned recommends that plaintiff's amended negligence claims against moving defendants be dismissed as time-barred because such claims do not relate back to the original complaint under California law or under Rule 15(c).

VI. <u>Remaining Newly-Named Defendants</u>

The responsive pleadings by defendants and medical staff Casas, Garibay and Idemudia are due on or before January 18, 2018. As set forth above, Casas, Garibay and Idemudia did not join in the motion to dismiss addressed herein. However, these three defendants are similarly situated to defendant Hallstrom; thus, if the district court adopts the undersigned's recommendations, dismissal of plaintiff's negligence claims against them would also be appropriate, and this action would proceed solely on plaintiff's Eighth Amendment deliberate indifference claims. Therefore, defendants Casas, Garibay and Idemudia are granted a further extension of time in which to file a responsive pleading.

VII. <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' request for judicial notice (ECF No. 13-2) is granted;

2. Defendants Casas, Garibay and Idemudia are granted a further extension of time and shall file their responsive pleading twenty-one days from the date the district court adopts or rejects the instant findings and recommendations.

IT IS RECOMMENDED that:

1. The motion to dismiss (ECF No. 13) be granted;

2. Plaintiff's state law negligence claims against defendants Gants, Hallstrom, Hassan, Pickering, and Thompson be dismissed as time-barred; and

3. Defendants Gants, Hallstrom, Hassan, Pickering, and Thompson be ordered to file a responsive pleading to plaintiff's Eighth Amendment claims within twenty-one days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 9, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/walt2393.oah.mtd.tort.sol